Sabita J. Soneji (State Bar No. 224262)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
*ssoneji@tzlegal.com*

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW EDLIN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC. and COINBASE, INC.,<br><br>Defendants. | Case No.: 8:25-cv-01135<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff Mathew Adlin, individually and on behalf of all others similarly
2    situated, upon personal knowledge of facts pertaining to himself and on information
3    and belief as to all other matters, by and through undersigned counsel, brings this
4    Class Action Complaint against Defendants Coinbase Global Inc., and Coinbase,
5    Inc. ("Coinbase" or "Defendants").

## INTRODUCTION

6
7    1.    Plaintiff brings this class action individually and on behalf of all others
8    similarly situated who had their sensitive personally identifiable information ("PII")
9    exposed to unauthorized third parties as a result of a data breach involving Coinbase
10   in or around May 2025 (the "Data Breach"). The compromised PII includes, but is
11   not limited to: names, addresses, phone numbers, email addresses, Social Security
12   numbers,  bank account numbers and related identifiers, images of government-
13   issued identification (such as driver's licenses and passports), account data
14   (including balance snapshots and transaction history), and certain corporate
15   information (including documents, training materials, and internal communications
16   accessible to support agents).

17   2.    Coinbase is the largest U.S. based cryptocurrency exchange, with over
18   one hundred million users and a trading volume of $468 billion.[1] Its stated purpose
19   is to "increase economic freedom in the world" by  "updat[ing]  the  century-old
20   financial  system  by  providing  a  trusted  platform"  to  trade cryptocurrencies.[2]

21   3.    On May 15, 2025, Coinbase publicly disclosed a Data Breach involving
22   cybercriminals who recruited and bribed rogue overseas support agents to steal
23   sensitive personal data from Coinbase's internal systems and then demanded a $20
24   million ransom not to publish the stolen information. Coinbase has not paid the

25
26
_____
27   [1] *See* Coinbase Global, Inc., Form 10-K (Feb. 13, 2025).
28   [2] *See* COINBASE, https://investor.coinbase.com/home/default.aspx (last accessed
     May 27, 2025).

1    demand and is cooperating with law enforcement in the investigation of the Data
2    Breach.[3]

3        4.    According to Coinbase, on May 11, 2025, it "received an email
4    communication from an unknown threat actor claiming to have obtained information
5    about certain Coinbase customer accounts, as well as internal Coinbase
6    documentation, including materials relating to customer-service and account-
7    management systems."[4] The cybercriminals "obtained this information by paying
8    multiple contractors or employees working in support roles outside the United States
9    to collect information from internal Coinbase systems to which they had access in
10   order to perform their job responsibilities. These instances of such personnel
11   accessing data without business need were independently detected by [Coinbase's]
12   security monitoring in the previous months." Coinbase "immediately terminated the
13   personnel involved and also implemented heightened fraud-monitoring protections
14   and warned customers whose information was potentially accessed in order to
15   prevent misuse of any compromised information."[5]

16       5.    Though Coinbase continues to claim that "security and transparency are
17   core to Coinbase," it provides a paltry amount of information concerning the Data
18   Breach on its website, and does not position impacted individuals to protect
19   themselves against fraud and identity theft. Indeed, it is clear that Coinbase
20   customers have already experienced the fallout of the Data Breach. Coinbase
21   acknowledged that "cybercriminals bribed and recruited a group of rogue overseas
22   support agents to steal Coinbase customer data to facilitate social engineering attacks
23   . . . to gather a customer list they could contact while pretending to be Coinbase—

24
25

---

26   [3] *See* Coinbase Global, Inc., Form 8-K (May 14, 2025).
27   [4] *Id.*
28   [5] *See* https://www.coinbase.com/blog/protecting-our-customers-standing-up-to-extortionists (last accessed May 27, 2025).

CLASS ACTION COMPLAINT
EDLIN V. COINBASE GLOBAL, INC., ET AL., CASE NO. 8:25-CV-01135

tricking people into handing over their crypto. They then tried to extort Coinbase for $20 million to cover this up.[6]

6.     Coinbase stated that it is "continuing to review and bolster its anti-fraud protections to mitigate the risk that the compromised information could be used in social-engineering attempts. To the extent any eligible retail customers previously sent funds to the threat actor as a direct result" of the Data Breach, Coinbase "intends to voluntarily reimburse them after it completes its review to confirm the facts."[7]

7.     While the financial impact is still being assessed and Coinbase hasn't revealed how many customers were deceived into sending funds to the cybercriminals in follow-up social engineering attacks, the company estimates that the resulting expenses will be "within the range of approximately $180 million to $400 million" for remediation and customer reimbursements.

8.     Coinbase's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiff's and Class members' reasonable expectations for data privacy jeopardized the security of Plaintiff's and Class member's Personal Information, and exposed Plaintiff and Class members to fraud and identity theft or the serious risk of fraud and identity theft.

9.     As a result of Defendants' conduct and the resulting Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

---

[6] *Id.*
[7] *Id.*

CLASS ACTION COMPLAINT
EDLIN v. COINBASE GLOBAL, INC., ET AL., CASE NO. 8:25-CV-01135

## PARTIES

10.     Plaintiff Matthew Edlin is an adult citizen of the state of California and resides in Irvine, California. Plaintiff is a victim of the Data Breach. Defendants received Plaintiff's PII in connection with the services he received as a Coinbase customer. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come. Plaintiff has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains backed up in Coinbase's possession, is protected and safeguarded from future breaches.

11.     Defendant Coinbase Global, Inc. is a Delaware corporation with its principal place of business located in One Madison Avenue Suite 2400 New York, New York 10010.

12.     Defendant Coinbase, Inc. is a wholly owned subsidiary of Coinbase Global, Inc. and operates the Coinbase platform.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendants.

14.     The Court has personal jurisdiction over Coinbase. Until 2020, Coinbase maintained its headquarters in San Francisco, California. Upon information and belief, Coinbase routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State, has intentionally availed itself of this jurisdiction by marketing and/or selling products and/or services and/or by accepting and processing payments for those products and/or services

within this State. In addition, Plaintiff's claims arise out of or relate to Coinbase's business activities in California.

15.    Venue properly lies in this judicial district because, inter alia, Coinbase transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A.    Coinbase's Collection and Retention of Personal Information**

16.    Coinbase is the largest U.S.-based cryptocurrency exchange, serving over 100 million users and handling a trading volume of approximately $468 billion. The company describes its mission as seeking to "increase economic freedom in the world" by "updat[ing] the century-old financial system by providing a trusted platform" for trading cryptocurrencies.[8]

17.    Coinbase routinely collects highly sensitive Personal Information in the process of providing its services and claims to be the "most trusted place for people and businesses to buy, sell, and use crypto."[9]

18.    Coinbase was aware of the need to safeguard the sensitive Personal Information entrusted to it by consumers as a necessary part of its business operations, stating as follows in a recent filing with the SEC:

> Privacy and protection of user data
>
> We are subject to a number of laws, rules, directives, and regulations relating to the collection, use, retention, security, processing, and transfer of personally identifiable information about our customers and employees in the countries where we operate. Our business relies on the processing of personal data in many jurisdictions and the movement of data across national borders. As a result, much of the personal data that we process,

---

[8] *See* COINBASE, https://investor.coinbase.com/home/default.aspx (last accessed May 27, 2025).

[9] *See* https://www.coinbase.com.

which may include certain financial information associated with individuals, is regulated by multiple privacy and data protection laws and, in some cases, the privacy and data protection laws of multiple jurisdictions. In many cases, these laws apply not only to third-party transactions, but also to transfers of information between or among us, our subsidiaries, and other parties with which we have commercial relationships.[10]

**B.    The Data Breach**

19.    On May 15, 2025, Coinbase publicly disclosed a Data Breach involving cybercriminals who recruited and bribed rogue overseas support agents to steal sensitive personal data from Coinbase's internal systems and then demanded a $20 million ransom not to publish the stolen information. Coinbase has not paid the demand and is cooperating with law enforcement in the investigation of the Data Breach.[11]

20.    On May 11, 2025, Coinbase reported receiving an email from an unknown threat actor claiming to have accessed customer account information and internal documentation, including materials related to customer service and account management. The attackers allegedly paid several overseas contractors or support staff to misuse their access to internal systems. Coinbase stated that its security systems had previously detected unauthorized access by these individuals, who were later terminated. In response, Coinbase implemented enhanced fraud-monitoring measures and notified affected customers to help prevent misuse of their information.

21.    Although Coinbase publicly claims that "security and transparency are core to Coinbase," it has disclosed only limited details about the Data Breach on its website and has failed to equip affected individuals with adequate tools to protect themselves from fraud and identity theft. In fact, evidence suggests that customers—

---

[10] *See* Coinbase Global, Inc., Form 10-K.

[11] *Id.*

CLASS ACTION COMPLAINT
EDLIN V. COINBASE GLOBAL, INC., ET AL., CASE NO. 8:25-CV-01135

1  and potentially others—have already suffered consequences from the breach.
2  Coinbase admitted that cybercriminals bribed and recruited rogue overseas support
3  agents to steal customer data, which was then used to carry out social engineering
4  attacks. These attackers posed as Coinbase representatives to deceive customers into
5  surrendering their cryptocurrency and later attempted to extort $20 million from
6  Coinbase to keep the breach quiet.

7       22.    Coinbase stated that it "is continuing to review and bolster its anti-fraud
8  protections to mitigate the risk that the compromised information could be used in
9  social-engineering attempts. To the extent any eligible retail customers previously
10  sent funds to the threat actor as a direct result" of the Data Breach, Coinbase "intends
11  to voluntarily reimburse them after it completes its review to confirm the facts."[12]

12  **C.    Impact of the Data Breach**

13       23.    As a result of the Data Breach, Plaintiff and Class members had their
14  most sensitive Personal Information "accessed" and "acquired" by cybercriminals,
15  causing them to suffer ascertainable losses in the form of the loss of the benefit of
16  their bargain, out-of-pocket expenses, the value of their time reasonably incurred to
17  remedy or mitigate the effects of the attack, and unauthorized use of their Personal
18  Information.

19       24.    The full extent, scope, and impact of the Data Breach on Coinbase
20  customers remain unknown. However, for Plaintiff and Class members, the harm is
21  already done—Coinbase has confirmed that their sensitive Personal Information was
22  disclosed to unauthorized individuals during the breach.

23       25.    Coinbase knew or should have known that its affected IT systems
24  and/or servers are unsecure and do not meet industry standards for protecting highly
25  sensitive customer Personal Information. On information and belief, Coinbase failed
26  to timely make changes to its data security systems, privacy policies, and its IT

27  _____

28  [12] *Id.*

CLASS ACTION COMPLAINT
EDLIN V. COINBASE GLOBAL, INC., ET AL., CASE NO. 8:25-CV-01135

systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

26.    The Data Breach creates a heightened security concern for Plaintiff and Class members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

27.    Given the highly sensitive nature of Social Security numbers, their theft—especially when combined with other personally identifiable information such as name, address, and date of birth—can enable widespread fraudulent activity. According to the U.S. Attorney General, a Social Security number is one of the most valuable pieces of information an identity thief can obtain.

28.    Coinbase had a duty to keep Plaintiff's and Class members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class members provided their Personal Information to Coinbase with the understanding that Coinbase would comply with its Privacy Policy and its obligations to keep such information confidential and secure from unauthorized disclosures.

29.    Defendants' data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in Coinbase's industry of financial services and crypto currency exchange operators.

**D.    Personal Data Theft: A Growing Threat to Victims**

30.    Data breaches are neither new nor unexpected. They have become increasingly common across various industries, including retail, often resulting from vulnerabilities in online and in-store systems. Companies that collect and store

sensitive personally identifiable information—such as Social Security numbers, financial data, and tax records—are well aware that this type of information is highly valuable and frequently targeted by cybercriminals.

31.    As such, these types of attacks should be anticipated by companies that store sensitive and personally identifying information, like Coinbase, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

32.    Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[13]

33.    Accordingly, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[14]

---

[13] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed May 27, 2025).

[14] *See* FEDERAL TRADE COMMISSION, WARNING SIGNS OF IDENTITY THEFT, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed May 27, 2025).

34.     According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[15]

35.     Personal Information is a valuable property right.[16] The value of sensitive personal information as a commodity is measurable. "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[17]

36.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other

---

[15] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed May 27, 2025).

[16] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[17] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

37.    Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

38.    There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[18]

39.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

40.    It is within this context that Plaintiff and all other Class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.    Coinbase Ignored Known Data Breach Risks**

41.    Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendants failed

---

[18] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

1  to take reasonable steps to adequately protect Personal Information, leaving its
2  clients (and potentially others) exposed to risk of fraud and identity theft.

3       42.    Coinbase is, and at all relevant times has been, aware that the sensitive
4  Personal Information it handles and stores in connection with providing software
5  services and products is highly sensitive. As a company that requires consumers to
6  provide highly sensitive and identifying information, Coinbase is aware of the
7  importance of safeguarding that information and protecting its systems and products
8  from security vulnerabilities.

9       43.    Coinbase was aware, or should have been aware, of regulatory and
10  industry guidance regarding data security, and was alerted to the risk associated with
11  failing to ensure that Personal Information was adequately secured.

12       44.    Despite the well-known risks of hackers and cybersecurity intrusions,
13  Defendants failed employ adequate data security measures in a meaningful way in
14  order to prevent breaches, including the Data Breach.

15       45.    The security flaws inherent to Defendants' IT systems or servers run
16  afoul of industry best practices and standards. Had Defendants adequately protected
17  and secured its servers or systems, and the sensitive Personal Information stored
18  therein, it could have prevented the Data Breach.

19       46.    Defendants permitted Class members' Personal Information to be
20  compromised and disclosed to criminals by failing to take reasonable steps against
21  an obvious threat.

22       47.    As a result of the events detailed herein, Plaintiff and Class members
23  suffered harm and loss of privacy, and will continue to suffer future harm, resulting
24  from the Data Breach, including but not limited to: invasion of privacy; loss of
25  privacy; loss of control over personal information and identities; fraud and identity
26  theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss
27  of possession and privacy of Personal Information; harm resulting from damaged
28  credit scores and information; loss of time and money preparing for and resolving

fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

48.     Victims of the Data Breach have likely already experienced harms and are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

49.     As a result of Coinbase's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action on behalf of himself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **All residents of the United States who were impacted by the Data Breach, including all persons who were sent notice by Coinbase that their Personal Information was compromised as a result of the Data Breach (the "Class").**

51.     Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendants, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants, or its parents, have a controlling interest, and its current or former officers and directors.

52.     **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable. Upon information and belief, the proposed Class appear to include tens of thousands of members who are geographically dispersed.

53.     **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendants' uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

54.     **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class' interests are well-represented by Plaintiff and undersigned counsel.

55.     **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class member's claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

56.     **Commonality and Predominance**: The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendants engaged in the wrongful conduct alleged herein;

15

- whether Defendants' data security practices resulted in the disclosure of Plaintiff's and other Class members' Personal Information and the Data Breach;

- whether Defendants violated privacy rights and invaded Plaintiff's and Class members' privacy; and

- whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

57.   Given that Defendants engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

58.   **Injunctive and Declaratory Relief**: Consistent with Fed. R. Civ. P. 23(b)(2), Defendants, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

## COUNT I

### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

59.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

60.   Defendants was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class members.

61.   Defendants knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class members, and to not ensuring that its servers and systems, and the Personal Information, was secure. These risks were reasonably foreseeable to Defendants, including because Defendants have previously experienced a data breach.

62.    Defendants owed duties of care to Plaintiff and Class members whose Personal Information had been entrusted to it.

63.    Defendants breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate data security. Defendants had a duty to safeguard Plaintiff's and Class members' Personal Information and to ensure that their adequately protected Personal Information. Defendants breached this duty.

64.    Coinbase's duty of care arises from its knowledge that its customers entrust it with highly sensitive Personal Information that Coinbase is required to, and represents that it will, handle securely. Indeed, on its website, Coinbase commits to data privacy in its Privacy Policy, including safeguarding sensitive Personal Information.

65.    Only Coinbase was in a position to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class members have now suffered.

66.    A "special relationship" exists between Defendants, on the one hand, and Plaintiff and Class members, on the other hand. Defendants entered into a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class members in connection with utilizing Coinbase's products and/or services.

67.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

68.    Defendants acted with wanton disregard for the security of Plaintiff's and Class members' Personal Information.

69.    The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendants' breach of duties. Defendants knew or should have known they were failing to meet these duties, and that Defendants'

1     breach would cause Plaintiff and Class members to experience the foreseeable harms
2     associated with the exposure of their Personal Information.

3         70.    As a direct and proximate result of Defendants' negligent conduct,
4     Plaintiff and Class members have been harmed and face an imminent and ongoing
5     risk of harm.

6         71.    As a direct and proximate result of Defendants' negligent conduct,
7     Plaintiff and Class members have suffered injury and are entitled to damages in an
8     amount to be proven at trial.

9 **<u>COUNT II</u>**

10 **BREACH OF IMPLIED CONTRACT**
11 **(On Behalf of Plaintiff and the Class)**

12         72.    Plaintiff realleges and incorporates all previous allegations as though
13     fully set forth herein.

14         73.    Coinbase provided or provides a platform for the exchange of
15     cryptocurrency, and Plaintiff and Class members provided their Personal
16     Information to Coinbase as users/customers or in otherwise transacting with
17     Defendants.

18         74.    In connection with their business relationship, Plaintiff and Class
19     members entered into implied contracts with Coinbase.

20         75.    Pursuant to these implied contracts, Plaintiff and Class members
21     provided Coinbase with their Personal Information. In exchange, Coinbase agreed,
22     among other things: (1) to take reasonable measures to protect the security and
23     confidentiality of Plaintiff's and Class members' Personal Information; and (2) to
24     protect Plaintiff's and Class members' Personal Information in compliance with
25     federal and state laws and regulations and industry standards.

26         76.    The protection of Personal Information was a material term of the
27     implied contracts between Plaintiff and Class members, on the one hand, and
28     Coinbase, on the other hand. Had Plaintiff and Class members known that Coinbase

1    would not adequately protect its customers' Personal Information they would not

2    have done business with Coinbase.

3         77.    Plaintiff and Class members performed their obligations under the

4    implied contract when they provided Coinbase with their Personal Information.

5         78.    Necessarily implicit in the agreements between Plaintiff/Class

6    members and Defendants was Coinbase's obligation to take reasonable steps to

7    secure and safeguard Plaintiff's and Class members' Personal Information.

8         79.    Defendants breached its obligations under its implied contracts with

9    Plaintiff and Class members by failing to implement and maintain reasonable

10   security measures to protect their Personal Information.

11        80.    Defendants' breach of its obligations of its implied contracts with

12   Plaintiff and Class members directly resulted in the Data Breach.

13        81.    The damages sustained by Plaintiff and Class members as described

14   above were the direct and proximate result of Defendants' material breaches of its

15   agreements.

16        82.    Plaintiff and other Class members were damaged by Defendants'

17   breach of implied contracts because: (i) they have suffered actual harm or identity

18   theft; (ii) they face a substantially increased risk of identity theft—risks justifying

19   expenditures for protective and remedial services for which they are entitled to

20   compensation; (iii) their Personal Information was improperly disclosed to

21   unauthorized individuals; (iv) the confidentiality of their Personal Information has

22   been breached; (v) they were deprived of the value of their Personal Information, for

23   which there is a well-established national and international market; (vi) they were

24   deprived of the benefit of their bargain; and/or (vii) they lost time and money

25   incurred to mitigate and remediate the effects of the breach, including the increased

26   risks of identity theft they face and will continue to face.

27

28

## COUNT III

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

83.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

84.     This claim is pleaded in the alternative to the implied contract claim.

85.     Coinbase has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class members to receive services from Coinbase.

86.     Coinbase has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class members did not receive services of the quality, nature, fitness, or value represented by Coinbase and that reasonable consumer expected.

87.     Coinbase has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class members.

88.     Equity and justice militate against permitting Coinbase to retain these profits and benefits.

89.     Plaintiff and Class members suffered injury as a direct and proximate result of Coinbase's unjust enrichment and seek an order directing Coinbase to disgorge these benefits and pay restitution to Plaintiff and Class members.

## RELIEF SOUGHT

WHEREFORE, Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully request that the Court grant the following relief:

A.     Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B.    Award Plaintiff and Class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.    Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendants from continuing the unlawful practices as set forth above;

D.    Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Award Plaintiff and Class members such other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: May 27, 2025

*/s/ Sabita J. Soneji*

Sabita J. Soneji (State Bar No. 224262)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
*ssoneji@tzlegal.com*

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT
EDLIN v. COINBASE GLOBAL, INC., ET AL., CASE No. 8:25-CV-01135